## MADSON v JASO

Docket No. 331605. Submitted August 2, 2016, at Lansing. Decided
    August 25, 2016, at 9:10 a.m. Leave to appeal sought.

Defendant, Latoya Jaso, petitioned the Lenawee Circuit Court,
Family Division, to modify a parenting-time order to reinstate her
parenting time after her release from jail. The original custody
order had granted defendant and plaintiff, Ronnie Madson, Jr.,
joint legal custody of the parties' minor child, and it granted
plaintiff physical custody of the minor child with parenting time
for defendant as agreed upon by the parties. The order was later
modified to establish a specific parenting-time schedule for defen-
dant. In December 2014, the court, Margaret M. S. Noe, J.,
modified the order and granted plaintiff extended parenting time
because defendant was in jail. An evidentiary hearing was held
after defendant's release from jail, and in October 2015, defen-
dant's parenting time was restored without limitation. Plaintiff
objected to the order and did not comply with it. In December
2015, the court determined that defendant was owed make-up
parenting time because of plaintiff's lack of compliance with the
order; the court ordered that defendant have five days of unin-
terrupted parenting time with the child and alternating weekly
parenting time after that five-day period; the order also estab-
lished a Christmas holiday schedule. Plaintiff did not comply
with that order or a subsequent order in which the court ordered
plaintiff to immediately turn over the minor child for defendant's
make-up parenting time. In February 2016, the court indicated it
would hold plaintiff in contempt if he did not comply with the
order, ordered the parties to obtain a custody evaluation in
preparation for a custody trial, and awarded plaintiff parenting
time on alternating weekends to allow defendant her make-up
parenting time. Plaintiff appealed that order, and the Court of
Appeals dismissed the appeal for lack of jurisdiction, explaining
that the postjudgment order granting plaintiff limited parenting
time was not a final order appealable by right as defined in MCR
7.202(6) because it could not be considered an order affecting the
custody of a minor under MCR 7.202(6)(a)(iii). *Madson v Jaso*,
unpublished order of the Court of Appeals, entered March 7, 2016
(Docket No. 331605). The Court of Appeals denied plaintiff's

motion for reconsideration. *Madson v Jaso*, unpublished order of the Court of Appeals, entered April 18, 2016 (Docket No. 331605). Plaintiff filed an application for leave to appeal, and the Michigan Supreme Court vacated the March 7, 2016 order of the Court of Appeals and remanded the case to the Court of Appeals for further consideration regarding whether the parenting-time order may have affected custody of the minor within the meaning of MCR 7.202(6)(a)(iii) or was otherwise appealable by right under MCR 7.203(A). 499 Mich 960 (2016).

The Court of Appeals *held*:

1. MCR 7.203(A)(2)—which grants the Court of Appeals jurisdiction of an appeal of right from an order of a court or tribunal from which an appeal of right to the Court has been established by law or court rule—did not grant plaintiff an appeal of right in this case because there is no law or court rule that establishes an appeal of right in the Court of Appeals from a make-up parenting-time order.

2. Under MCR 7.203(A)(1), the Court of Appeals has jurisdiction of an appeal of right from an order that meets the definition of a final order under MCR 7.202(6). MCR 7.202(6)(a)(i)—which provides that in a civil case, a final order includes the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties—did not provide plaintiff with an appeal of right because the trial court order was a provisional, postjudgment parenting-time order and did not dispose of all the claims and rights of the parties.

3. Under MCL 722.1102(d) of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.*, a child-custody proceeding is defined as a proceeding in which legal custody, physical custody, or parenting time with respect to a child is an issue. Physical custody concerns caregiving authority and which parent a child is living with, and legal custody concerns decision-making authority related to a child's welfare and life. The UCCJEA language—which refers separately to physical custody, legal custody, and parenting time—supports the conclusion that parenting time is a distinct concept to be considered in the context of physical and legal custody.

4. It is not necessary for a trial court order to expressly state that it involves a custody determination to affect custody. Under MCR 7.202(6)(a)(iii), a final order in a domestic relations action is a postjudgment order affecting the custody of a minor. MCR 7.202(6)(a)(iii) does not limit the term "custody" to physical custody; an order under that subrule is appealable by right when it produces an effect on, or influences in some way, the legal

custody or physical custody of a minor. A trial court order affects custody when it has an effect on where a minor child will live, and for that reason an order denying a motion to change custody is a final order for purposes of MCR 7.202(6)(a)(iii) and appealable by right. The court rule does not provide an appeal of right from an order granting make-up parenting time. If a trial court order affecting legal custody—for example, an order determining whether a child may attend summer camp, whether to expose the child to religion, or whether to expose the child to certain television programs—were appealable by right under MCR 7.202(6)(a)(iii) as a postjudgment order, that understanding would so expand the court rule as to nullify the qualifying language "affecting the custody of a minor." The Michigan Supreme Court would have included parenting-time orders in the court rule had it intended those orders to be appealable by right.

5. The trial court's make-up parenting-time order was not a final order for purposes of MCR 7.202(6)(a)(iii), and plaintiff accordingly did not have an appeal of right under MCR 7.203(A)(1) from the order. The order did not change the parties' custody of the minor child because plaintiff retained sole physical custody of the minor child, did not change the child's established custodial environment, and did not resolve where the minor child would live. Rather, the order granted make-up parenting time to defendant because of plaintiff's failure to comply with the parenting-time order for months. While the order granted defendant extensive make-up parenting time, that order was separate from the issue of custody, which was already scheduled to be evaluated.

Appeal dismissed.

PARENT AND CHILD — POSTJUDGMENT ORDERS AFFECTING CUSTODY — APPEALS OF RIGHT — MAKE-UP PARENTING TIME.

A postjudgment order affecting the custody of a minor is an order that produces an effect on, or influences in some way, the legal custody or physical custody of a minor; an order for make-up parenting time does not affect the custody of a child, is not a final order under MCR 7.202(6)(a)(iii), and is therefore not appealable by right under MCR 7.203(A)(1).

*Speaker Law Firm* (by *Liisa R. Speaker* and *Jennifer M. Alberts*) for plaintiff.

Before: SAWYER, P.J., and HOEKSTRA and O'BRIEN, JJ.

PER CURIAM. This case is before us on remand from our Supreme Court for further consideration of our March 7, 2016 order, which dismissed plaintiff's claim of appeal for lack of jurisdiction. The Supreme Court has directed us to "issue an opinion specifically addressing the issue whether the order in question may affect [the] custody of a minor within the meaning of MCR 7.202(6)(a)(iii), or otherwise be appealable by right under MCR 7.203(A)." *Madson v Jaso*, 499 Mich 960 (2016). We conclude that this Court lacks jurisdiction over this provisional, postjudgment order for make-up parenting time and, accordingly, dismiss plaintiff's appeal.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff, Ronnie Madson, Jr., and defendant, Latoya Jaso, who were never married, are the parents of a minor child born in 2009. In December 2011, the circuit court entered an order providing that the parties would share joint legal custody and plaintiff would have physical custody of the child; parenting time would be at times agreeable to the parties. In June 2014, in response to defendant's request for a more formal parenting-time arrangement, the circuit court set forth a schedule under which defendant would have one mid-week overnight and alternating weekends with the child.

The parents then made separate reports to Child Protective Services regarding abuse of the child, but the allegations were not substantiated. In October 2014, plaintiff moved to amend the parenting-time order, but the motion was not heard because defendant was jailed in November 2014 for nonpayment of child support.

In December 2014, the circuit court entered an ex parte order, granting plaintiff extended parenting time. When defendant was released from jail, she petitioned the court for reinstatement of her parenting time. The circuit court referred the matter to the Friend of the Court in February 2015, and the referee held an evidentiary hearing in May 2015.

Six months later, in October 2015, the Friend of the Court referee recommended that defendant's parenting time be restored and that nothing should prevent her from having normal, regular parenting time with the child. Plaintiff did not comply with the order and objected to it.

At a December 2015 hearing, the circuit court ruled that defendant was owed make-up parenting time. The court ordered that defendant was first entitled to five days of uninterrupted parenting time and that the parties would then alternate parenting time in future weeks. The court also established a Christmas holiday schedule, but plaintiff did not comply with the order. The following day, the circuit court issued an order directing plaintiff to immediately turn the child over to defendant for make-up parenting time. Plaintiff again did not comply with the order. Instead, plaintiff obtained a personal protection order against defendant from the county where he lived.

At a January 2016 hearing, the circuit court observed that it would resolve the matter in the child's best interests, warned plaintiff it would issue an arrest warrant for him for contempt if he did not abide by the order, and directed the parties to obtain a custody evaluation from a psychologist in anticipation of a custody trial. In the interim, plaintiff was awarded parenting time on alternating weekends.

Plaintiff filed a claim of appeal in this Court, maintaining that the instant make-up parenting-time order was one that affected custody. This Court dismissed the appeal on its own motion for lack of jurisdiction.[1] Plaintiff moved for reconsideration, which this Court denied.[2]

Plaintiff applied for leave to appeal in our Supreme Court, arguing that this Court's decisions with respect to jurisdiction were inconsistent and requesting that the case be remanded to this Court as on leave granted. Plaintiff stated that he was not asking the Supreme Court to grant leave to appeal given the potential for delay and indicated that the circuit court and this Court had already caused delays in this matter.[3] Amicus curiae Michigan Coalition of Family Law Appellate Attorneys[4] filed an amicus brief in the Supreme Court and called for clarity regarding jurisdiction in domestic relations appeals.

On June 24, 2016, our Supreme Court vacated this Court's March 7, 2016 order of dismissal and remanded the case to this Court for further consideration. The order provides, in pertinent part:

> On remand, we direct the Court of Appeals to issue an opinion specifically addressing the issue whether the

---

[1] *Madson v Jaso*, unpublished order of the Court of Appeals, entered March 7, 2016 (Docket No. 331605).

[2] *Madson v Jaso*, unpublished order of the Court of Appeals, entered April 18, 2016 (Docket No. 331605).

[3] We note that this Court dismissed plaintiff's claim of appeal just 18 days after it was filed. Despite this Court's standard observation in a dismissal order that appellant could file an application for leave to appeal in this Court, plaintiff instead moved for reconsideration. After reconsideration was denied, plaintiff still did not file an application seeking review on the merits from this Court, but instead chose to file an application in our Supreme Court.

[4] The Coalition is an informal group of appellate attorneys whose practices primarily involve domestic relations appeals.

order in question may affect [the] custody of a minor within the meaning of MCR 7.202(6)(a)(iii), or otherwise be appealable by right under MCR 7.203(A). If the Court of Appeals determines that the Lenawee Circuit Court Family Division's order is appealable by right, it shall take jurisdiction over the plaintiff-appellant's claim of appeal and address its merits. If the Court of Appeals determines that the Lenawee Circuit Court Family Division's order is not appealable by right, it may then dismiss the plaintiff-appellant's claim of appeal for lack of jurisdiction, or exercise its discretion to treat the claim of appeal as an application for leave to appeal and grant the application. See *Varran v Granneman (On Remand)*, 312 Mich App 591[; 880 NW2d 242] (2015), and *Wardell v Hincka*, 297 Mich App 127, 133 n 1[; 822 NW2d 278] (2012). We do not retain jurisdiction. [*Madson*, 499 Mich 960.]

## II. STANDARD OF REVIEW

Whether this Court has jurisdiction over an appeal is an issue of law subject to review de novo. *Wardell*, 297 Mich App at 131. Likewise, the interpretation of a court rule is a question of law that is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## III. ANALYSIS

The question of jurisdiction in this case rests on two court rules, MCR 7.202 and MCR 7.203. When interpreting a court rule, this Court relies on the following principles:

The rules of statutory interpretation apply to the interpretation of court rules. The goal of court rule interpretation is to give effect to the intent of the drafter, the Michigan Supreme Court. The Court must give language that is clear and unambiguous its plain meaning and enforce it as written. Each word, unless defined, is to be given its plain and ordinary meaning, and the Court may

consult a dictionary to determine that meaning. [*Varran*, 312 Mich App at 599 (citations omitted).]

MCR 7.203(A) contains two subparts, and the latter is quickly addressed. MCR 7.203(A)(2) provides that this Court has jurisdiction of an appeal of right from an order of a court or tribunal from which an appeal of right to this Court has been established by law or court rule. No law or court rule establishes an appeal of right to this Court from an order setting forth make-up parenting time; therefore, MCR 7.203(A)(2) does not apply.

Accordingly, we turn to MCR 7.203(A)(1), which provides an appeal of right from an order that meets the definition of a "final order" under MCR 7.202(6). Subpart (a) of that court rule includes the following definitions of a final order in a civil case:

(i) the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order,

\* \* \*

(iii) in a domestic relations action, a postjudgment order affecting the custody of a minor . . . . [MCR 7.202(6)(a).]

MCR 7.202(6)(a)(i) does not apply here. The current order being appealed does not dispose of all the claims and rights of the parties. Rather, the order was one of a series of provisional, postjudgment parenting-time orders issued before the custody evaluation that would take place prior to the custody trial; accordingly, it is not a final order under MCR 7.202(6)(a)(i).[5]

---

[5] The first final order in this case was the December 2011 order that awarded the parties joint legal custody of the child and awarded physical custody to plaintiff.

The dispositive issue, therefore, is whether the instant parenting-time order is an order "affecting the custody of a minor" within the meaning of MCR 7.202(6)(a)(iii). In examining this issue, we consider the nature and scope of the order being appealed to determine the essence of that order. The order does not change the parties' custody of the minor child, because the court's order regarding custody still stands; plaintiff retains sole physical custody. The order grants make-up parenting time to defendant as a result of plaintiff's withholding of parenting time for months. That the order does not have a specific end date does not mean that it is not an interim order. Also, because the order resulted from plaintiff withholding make-up parenting time, the circuit court did not examine the MCL 722.23 best-interest factors in the context of a custody decision.[6] Indeed, the circuit court properly considered the make-up parenting time separate and apart from custody.

Michigan appellate courts have wrestled with the application of MCR 7.202(6)(a)(iii). Our Courts have generally held that an order need not expressly indicate that it is a custody determination to affect custody. See *Thurston v Escamilla*, 469 Mich 1009 (2004). The court rule does not require the order be permanent to fall within MCR 7.202(6)(a)(iii). *Surman v Surman*, 277 Mich App 287, 294; 745 NW2d 802 (2007).

Determining whether an order falls within MCR 7.202(6)(a)(iii) is not a straightforward endeavor. This Court's jurisdiction of right over orders affecting child custody has been recognized in cases involving the denial of a motion to change domicile, *Thurston*, 469

---

[6] Nor did it examine the MCL 722.27a(6) factors designed for parenting-time determinations when a parent is convicted of certain criminal sexual conduct offenses and the victim was the parent's child.

Mich 1009, the denial of a motion to change the children's school, *Pierron v Pierron*, 282 Mich App 222; 765 NW2d 345 (2009), and the grant of a motion for grandparenting time, *Varran*, 312 Mich App 591. Conversely, this Court has dismissed claims of appeal for lack of jurisdiction on the basis that the orders appealed do not affect the custody of a minor in cases involving a determination that the children must continue to attend the same elementary school until further order of the circuit court, *Zalewski v Garrison*, unpublished order of the Court of Appeals, entered November 6, 2014 (Docket No. 323543), a ruling to hold in abeyance for six months a decision regarding custody and parenting time based on the parents' progress, *Hutchison v Leadbetter*, unpublished order of the Court of Appeals, entered May 3, 2016 (Docket No. 332503), and the denial of a parent's request to change a child's school enrollment from one school to another, *Marik v Marik*, unpublished order of the Court of Appeals, entered July 12, 2016 (Docket No. 333687). These cases illustrate that the question of jurisdiction under MCR 7.202(6)(a)(iii) is not without complication. The difficulty is exacerbated by ambiguity in the language of the court rule. We therefore urge the Supreme Court either to amend the court rule to resolve the confusion or to clarify its intent in an opinion.

In attempting to discern our Supreme Court's intent in the court rule, this Court has previously examined the plain language of MCR 7.202(6)(a)(iii). The court rule does not define "affecting," so this Court in *Wardell*, 297 Mich App at 132, referred to a dictionary definition of the term "affect," stating "[m]ost generally, to produce an effect on; to influence in some way," *Black's Law Dictionary* (9th ed). The *Wardell* Court noted that an order affecting custody includes one in which the trial court's ruling has an effect on where the

child will live. *Wardell*, 297 Mich App at 132. The Court focused on the physical location of the child, and determined that an order denying a motion to change custody is a final order for purposes of MCR 7.202(6)(a)(iii). *Id.* at 132-133. The Court reasoned as follows:

> In a custody dispute, one could argue, as plaintiff does, that if the trial court's order does not change custody, it does not produce an effect on custody and therefore is not appealable of right. However, one could also argue that when making determinations regarding the custody of a minor, a trial court's ruling necessarily has an effect on and influences where the child will live and, therefore, is one affecting the custody of a minor. Furthermore, the context in which the term is used supports the latter interpretation. MCR 7.202(6)(a)(iii) carves out as a final order among postjudgment orders in domestic relations actions those that affect the custody of a minor, not those that "change" the custody of a minor. As this Court's long history of treating orders denying motions to change custody as orders appealable by right demonstrates, a decision regarding the custody of a minor is of the utmost importance regardless of whether the decision changes the custody situation or keeps it as is. We interpret MCR 7.202(6)(a)(iii) as including orders wherein a motion to change custody has been denied. [*Id.*]

The order in this case did not resolve which parent would have custody of the child, nor did it resolve where the child would live. Rather, it set forth make-up parenting time because plaintiff had unilaterally withheld that time from defendant.

This Court cited *Wardell* in *Rains v Rains*, 301 Mich App 313, 321-322; 836 NW2d 709 (2013), wherein the plaintiff had appealed the denial of her motion to change the domicile of the minor child from Detroit to Traverse City and the resulting modification of her parenting time. In response to the motion, the defen-

dant had moved for a change in custody. *Id*. at 314-315. The *Rains* Court decided that the relevant inquiry was whether a trial court's order " 'influences where the child will live,' regardless of whether the trial court's ultimate decision keeps the custody situation 'as is.' " *Id*. at 321, citing *Wardell*, 297 Mich App at 132-133. The *Rains* Court determined that the trial court's denial of the plaintiff's motion to relocate necessarily influenced where the child would live and implicitly denied the defendant's motion to change custody. *Id*. at 323. This Court added that "[i]f a change in domicile will substantially reduce the time a parent spends with a child, it would potentially cause a change in the established custodial environment." *Id*. at 324.

In this case, plaintiff retained physical custody of the child, although the court did order extensive make-up parenting time for defendant. That the order in the interim substantially reduced the amount of time plaintiff could spend with the child is not dispositive; the order granted defendant make-up parenting time, which was separate from the issue of custody, the evaluation of which was to occur within weeks. There is no indication that the order had the potential to cause a change in the child's established custodial environment. Further, this case does not appear to have relegated plaintiff "to the role of a 'weekend' parent," *Powery v Wells*, 278 Mich App 526, 528; 752 NW2d 47 (2008), because the circuit court issued the order to allow defendant make-up parenting time after plaintiff unilaterally withheld it. Plaintiff makes the argument that the practical effect of the order flipped the parties' custody arrangement without the benefit of a hearing. However, in contrast to *Rains*, here the trial court's decision did not implicitly deny a motion to change custody.

We acknowledge that Michigan recognizes both physical and legal custody. See *Foxall v Foxall*, 319 Mich 459, 460-461; 29 NW2d 912 (1947). Additionally, the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq.*, defines child-custody determination, MCL 722.1102(c), and child-custody proceeding, MCL 722.1102(d), as respectively including a determination or proceeding involving legal custody, physical custody, or parenting time. See, e.g., MCL 722.1102(d) (" 'Child-custody proceeding' means a proceeding in which legal custody, physical custody, *or parenting time* with respect to a child is an issue.") (emphasis added). This Court relied on that definition when reviewing a parenting-time determination as part of a custody decision in *Shade v Wright*, 291 Mich App 17, 22; 805 NW2d 1 (2010).[7] Later, in *In re AJR*, 496 Mich 346, 354-363; 852 NW2d 760 (2014), our Supreme Court discussed the divisibility of the concept of custody, observing that physical custody concerns a child living with a parent, while legal custody concerns decisions that significantly affect the child's life. *In re AJR* reinforces that physical and legal custody are distinct concepts. Further, the language used in MCL 722.1102(c) and (d) of the UCCJEA ("legal custody, physical custody, or parenting time") supports the conclusion that parenting time is also a distinct concept to be considered in the context of legal and physical custody. It follows that, had our Supreme Court intended the court rule to embrace both distinct concepts, it would have so stated.

---

[7] Notably, *Shade* involved the denial of the defendant's motion to change physical custody along with the modification of the parenting-time schedule, so *Shade* was not limited to a dispute over parenting time. *Shade*, 291 Mich App at 20. Further, the trial court in *Shade* had held a de novo hearing. *Id.* Therefore, *Shade* is distinguishable from this case because in this case the circuit court had not held a hearing or ruled on custody before issuing the make-up parenting-time order.

More recently, this Court addressed the distinction between legal and physical custody in *Varran*, 312 Mich App 591, in a matter involving grandparenting time. In the absence of a definition of "custody" in MCR 7.202(6)(a)(iii), this Court referred to the following dictionary definition of custody:

[Custody is the] care, control, and maintenance of a child awarded by a court to a responsible adult. Custody involves legal custody (decision-making authority) and physical custody (caregiving authority), and an award of custody [usually] grants both rights. [*Id*. at 604, quoting *Black's Law Dictionary* (10th ed) (formatting altered by *Varran*).]

The *Varran* Court also referred to *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 511; 835 NW2d 363 (2013), which had noted that the Child Custody Act, MCL 722.21 *et seq*., distinguishes between physical custody (where the child resides) and legal custody (decision-making authority regarding important decisions relating to the child's welfare). *Varran*, 312 Mich App at 604. The *Varran* majority explained that MCR 7.202(6)(a)(iii) does not limit the term "custody" to physical custody and, therefore, reasoned that an order appealable by right includes "an order that produces an effect on or influences in some way the legal custody *or* physical custody of a minor." *Id*. Under that construction, the Court concluded that the order regarding grandparenting time interfered with a parent's fundamental right to make decisions concerning the care, custody, and control of the child and was therefore a postjudgment order affecting the legal custody of a minor. *Id*. at 606. *Varran*, however, is distinguishable. Because *Varran* involved a grandparenting-time order, which is "markedly different" from a custody dispute between two parents, see *Falconer v Stamps*, 313 Mich App 598, 646-647; 886 NW2d 23 (2015), it simply is not

on all fours with the case at bar—a case involving make-up parenting time between two parents.

Using a change of legal custody as a basis for establishing this Court's jurisdiction for an appeal of right would broaden the definition of "custody" in MCR 7.202(6)(a)(iii). An expansive definition could include all manner of decisions regarding the child, allowing appeals of right from a variety of decisions (e.g., whether to allow a child to attend one specific summer camp over another; whether to allow a child to participate in travel soccer; whether one parent or the other would pick up the child from school; or from decisions regarding "how to treat the child if he is not feeling well; whether to expose the child to religion and religious practices; and to what persons, television programs, and movies to expose the child," *Varran*, 312 Mich App at 607). An expansion of this Court's jurisdiction to include legal custody orders within the meaning of a "postjudgment order" would so expand MCR 7.202(6)(a)(iii) as to nullify the qualifying language "affecting the custody of a minor." To extend the court rule to encompass all postjudgment decisions regarding minors in domestic relations appeals would be to return to the jurisdictional standard before the amendment of the court rule.[8]

Had our Supreme Court intended parenting-time orders be appealable by right, it would have included parenting time in the court rule. Absent that language, we decline to read "parenting time" into the plain

---

[8] Before 1994, most postjudgment domestic relations orders were appealable by right. The Staff Comment to the February 1994 amendment of MCR 7.203 indicates that the court rule change "eliminates appeals of right as to certain types of judgments or orders. . . . In domestic relations cases, the only postjudgment orders that will be appealable by right are those involving the custody of minors." MCR 7.203, 444 Mich clxvi, clxx (staff comment).

language of the rule. See *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 410-411; 809 NW2d 669 (2011) (maintaining that courts should not read words into a statute).

The order appealed in this case sets forth a framework for a *future* custody decision, pending the psychologist's report and a custody trial. Once the custody order enters, an appeal of right may be taken. In the meantime, the circuit court has issued an interim order regarding make-up parenting time. Presumably, the case has moved forward in the circuit court in accordance with its order for a custody evaluation and a custody hearing. Further, the issue may at this time be moot,[9] as months have passed and the court may have issued further orders regarding parenting time. All of these factors weigh in favor of our ruling that jurisdiction by an appeal of right is improper here.

In declining jurisdiction pursuant to MCR 7.202(6)(a)(iii), we have not barred access to the appellate courts because an application for leave to appeal is available to challenge a trial court's parenting-time decision. An application for leave to appeal in this Court receives review and analysis by district commissioners, who are experienced court staff attorneys, before submission to a judicial panel, which generally considers the merits in the context of deciding in an order whether to grant or deny leave or order other peremptory relief. Consequently, parties filing applications receive access to appellate review in this Court. To the extent the issue is not now moot, plaintiff here is free to file a delayed application for leave to appeal

---

[9] An issue is moot and generally will not be reviewed if this Court can no longer fashion a remedy for the alleged error. *Silich v Rongers*, 302 Mich App 137, 151-152; 840 NW2d 1 (2013).

the circuit court's parenting-time decision and obtain appellate review of that application in accordance with these procedures.

### IV. CONCLUSION

We dismiss this claim of appeal for lack of jurisdiction. We have chosen not to exercise our discretion to treat the claim of appeal as an application for leave to appeal and grant the application, see *Pierce v Lansing*, 265 Mich App 174, 183; 694 NW2d 65 (2005), but instead we dismiss this claim, an option included in our Supreme Court's remand order, *Madson*, 499 Mich 960. We have determined that this Court lacks jurisdiction over this parenting-time order, and the appeal is properly dismissed.

Dismissed.

SAWYER, P.J., and HOEKSTRA and O'BRIEN, JJ., concurred.